22777

The STATE, Respondent v. Richard Charles JOHNSON, Appellant.

(360 S. E. (2d) 317)

Supreme Court

322

*Asst. Appellate Defenders Stephen P. Williams* and *D. Mark Stokes* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia and *Solicitor Randolph Murdaugh, Jr.,* Hampton, *for respondent.*

Heard March 9, 1987.

Decided Aug. 24, 1987.

FINNEY, Justice:

Richard Charles Johnson, the appellant, was indicted for the murder of Bruce K. Smalls (Trooper Smalls), a South Carolina State Trooper. A jury convicted appellant of murder, and he was sentenced to death. We reverse and remand this case for a new trial.

In September, 1985, Dan Swanson (Swanson) was traveling through North Carolina in his recreational vehicle on his way to Florida when he picked up appellant, who was hitchhiking. The following day Swanson and appellant picked up hitchhikers Curtis Harbert (Harbert) and Connie Hess (Hess), alias Julie Smith, on Interstate 95. This group made stops in Florence County and Clarendon County, South Carolina, where Swanson parked along the interstate to rest. As Swanson slept, the appellant fatally shot him with a .357 caliber gun. Appellant and Harbert wrapped Swanson's body in blankets and sheets, tied it with wire and concealed the corpse in the vehicle underneath a mattress.

The appellant, Harbert and Hess continued their journey in Swanson's vehicle with appellant driving. Appellant had been drinking liquor and began driving erratically. Several motorists noticed his reckless operation of the vehicle, including a truck driver who notified Trooper Smalls. The officer stopped the vehicle and during the questioning, appellant shot Trooper Smalls six times, killing him.

Appellant alleges he was denied due process of law when the solicitor argued to the jury during the guilt phase of the trial that appellant had shown no remorse for his actions.

An accused has the constitutional right to act as his own counsel, confront witnesses, plead not guilty, and put the state to its burden of proof. *State v. Brown,* 289 S. C. 581, 347 S. E. (2d) 882 (1986); *State v. Sloan,* 278 S. C. 435, 298 S. E. (2d) 92 (1982). "No right is more fundamental than the right of an accused to plead not guilty and put the state to its proof." *State v. Sloan,* 298 S. E. (2d) 92, 95. When an accused asserts a constitutional right, it is impermissible for the state to comment upon or argue in favor of guilt or punishment based upon his assertion of that right. *See, Doyle v. Ohio,* 426 U. S. 610, 96 S. Ct. 2240, 49 L. Ed. (2d) 91 (1976). For example, when a defendant invokes the Fifth Amendment, the prosecutor cannot proffer the accused's silence as evidence of guilt. *See, Griffin v. California,* 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. (2d) 106 (1965). Likewise, this Court has held that comments upon an accused's decision not to testify and plead not guilty are egregious error. *See, State v. Sloan,* 298 S. E. (2d) 92, 94-95; and *State v. Brown,* 347 S. E. (2d) 882, 886-887.

In the instant case, appellant pled not guilty and testified that he did not recall shooting Trooper Smalls. In his closing argument, the solicitor made reference to appellant's alleged memory lapse and stated:

When he got on that stand, he said, "I don't remember. But if I had done it, *I'm sorry.*" Did you hear him say that? Don't you think *he ought to apologize* ... (Emphasis added.)

We hold the solicitor's improper reference to appellant's lack of remorse was error because it was a comment upon his constitutional right to plead not guilty and put the state to its burden of proof. It would be an irreconcilable equivocation for the accused to plead not guilty, present a defense, and simultaneously express remorse for acts he denied committing. Under these circumstances, an apology would have violated appellant's Fifth Amendment right not to incriminate himself as well as his Sixth Amendment right to present a defense. Comments by the prosecution upon an accused's failure to express remorse invite the jury to draw an adverse inference merely because the defendant did not appear penitent.

Appellant next alleges he was denied due process of law and the right to a fair trial when the court allowed the state to introduce detailed evidence of his prior acts or crimes because those past acts were either irrelevant or the prejudicial effect of the evidence outweighed its probative value.

It is well established that evidence of other crimes or prior bad acts is inadmissible to show criminal propensity or to demonstrate the accused is a bad individual. *See, e.g., State v. Gregory,* 191 S. C. 212, 4 S. E. (2d) 1 (1939). Evidence of other crimes is never admissible unless necessary to establish a material fact or element of the crime charged. *See, United States v. Johnson,* 610 F. (2d) 194 (4th Cir. 1979); *State v. Byers,* 277 S. C. 176, 284 S. E. (2d) 360 (1981); *State v. Lyle,* 125 S. C. 406, 118 S. E. 803 (1923). Even if evidence of other crimes is deemed relevant and admissible, the evidence may still be excluded if its probative value is substantially outweighed by the danger of undue prejudice or misleading the jury. *See, State v. Wilson,* 274 S. C. 635, 266 S. E. (2d) 426 (1980). Implicit in the rules of evidence

which permit the introduction of prior bad acts or crimes into evidence is the prerequisite that they establish some element, i.e., intent or motive, of the crime charged. *See, e.g., State v. Lyle, supra; State v. South,* 285 S. C. 529, 331 S. E. (2d) 775 (1985); and *State v. Huggins,* 285 S. C. 361, 329 S. E. (2d) 759 (1985).

At the trial the state was allowed to introduce evidence of grand larceny, armed robbery and Swanson's murder allegedly committed by appellant in Clarendon County. The theory advanced by the prosecution to support admission of this otherwise inadmissible evidence was that commission of these crimes was so closely related to the principal crime that revelation of appellant's criminal behavior was necessary to show motive and intent. Specifically, the state argued that "[t]he facts and circumstances of Swanson's homicide reasonably tended to demonstrate appellant's state of mind ... at the time of the murder of Smalls."

The state introduced at the trial for Trooper Smalls' murder, *inter alia,* (A) appellant's prior statement concerning Swanson's murder (admitted for impeachment purposes to illustrate that despite appellant's alleged lapse of memory concerning the occurrences of September 27, 1985, he had previously recited the events clearly); (B) a photograph of Swanson's body; (C) Deanna Swanson's identification of items allegedly taken in the armed robbery and grand larceny; (D) Hess' and Harbert's detailed testimony about Swanson's murder, the armed robbery and grand larceny; and (E) a pathologist's testimony as to the etiology of Swanson's wounds and the cause of death. It is uncontradicted in the record that Swanson died from a gunshot wound to the head and that the body was concealed in the camper. Based upon this record, we conclude that the pathologist's testimony and the photograph of Swanson's body were irrelevant as introduced to show motive and intent, and their admission constituted error.

We now address appellant's argument that the admission of details surrounding the relevant prior-acts evidence prejudiced the appellant because the prejudicial effect outweighed its probative value. In examining the issue of admissibility of prior-acts evidence, this Court is required to determine whether the prejudicial effect of the evidence

outweighed its probative value, which could result in a jury reaching a "legally spurious presumption of guilt." *State v. Wilson,* 266 S. E. (2d) 426, 428. If the prejudicial effect outweighs its probative value, such evidence should be excluded. *Id.* at 426.

Whether appellant suffered prejudice must be ascertained on the basis of the entire record. Once the trial court makes a determination that evidence of prior bad acts or criminal behavior is admissible, a clear distinction must be made between the amount of proof required to adequately establish a material fact or element of the crime charged and the point at which such prior-acts evidence becomes prejudicial. Considering the volume of testimony and evidence presented about the armed robbery, grand larceny and Swanson's murder, as well as the solicitor's numerous references to appellant's prior crimes in closing argument, it can be asserted with reasonable certitude that the prejudicial impact of the excessively detailed evidence presented concerning appellant's prior crimes outweighed its probative value. Much of Hess' and Harbert's testimony established no material fact or element of the crime for which appellant was on trial; instead, it served to prejudice the jury by focusing its attention on appellant's propensity to commit criminal acts.[1] Under the totality of the circumstances, we conclude that the admission of extensive evidence in detail of appellant's prior criminal conduct was an abuse of discretion, prejudiced the jury, and constitutes reversible error. *See, e.g., Kotteakos v. U.S.,* 328 U. S. 750, 765, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946). *See also, State v. Sullivan,* 277 S. C. 35, 282 S. E. (2d) 838 (1981).[2]

---

[1] For example, Harbert testified that appellant placed a .357 pistol to Harbert's head with the hammer pulled back.

[2] This Court has diligently attempted to avoid imposing impractical constraints on the introduction of evidence in the retrial of this case by not specifying what prior acts will or will not be admissible. To some extent, this will depend upon the witnesses available and the content of their testimony. Further guidance in establishing parameters for the admissibility of prior-acts evidence is set out in *State v. Lyle, supra. See, also,* G. Lilly, *An Introduction To The Law Of Evidence,* at 131 (1978):

A trial judge should not perfunctorily exclude or accept evidence of other crimes or bad acts, but rather determine the admissibility on the basis of such factors as probative value, potential prejudice and the availability of alternative forms of evidence.

Finally, appellant contends he was denied due process of law when the Court failed to instruct the jury that it shall not consider parole eligibility, and the terms "life imprisonment" and "death sentence" should be understood in their plain and ordinary meaning. *See, State v. Atkins*, 360 S. E. (2d) 302 (1987); *State v. Norris*, 285 S. C. 86, 328 S. E.. (2d) 339 (1985).

The legislature has enacted a plan of punishment, which is either life or death under the laws of this state. In the sentencing phase of a capital case, the jury's sole function is to make a selection of life imprisonment or the death penalty, based upon the circumstances of the crime and the characteristics of the defendant, and not to legislate a plan of punishment. *See, e.g., State v. Plath*, 281 S. C. 1, 313 S. E. (2d) 619 (1984).

During deliberations in the sentencing phase of appellant's trial, the jury returned to the courtroom seeking to determine whether it was possible to recommend a life sentence without parole. The Court instructed the jury as follows:

> Ladies and Gentlemen of the Jury, the possibility of parole is of no concern of yours, and you should not consider whether or not the Defendant will or will not be paroled. That's a matter that is not of our concern ...

In *Norris*, this Court held that an instruction to clarify a jury's concern about parole should also contain a directive that "life imprisonment" and "death sentence" are to be understood in their ordinary and plain meaning. 285 S. C. 95, 328 S. E. (2d) 339. The court's charge in the case at bar only instructed the jury that they should not consider parole in its deliberations and omitted the instruction required by *Norris* and *Plath*, *viz.*, that "death sentence" means death and "life sentence" means a life sentence. We hold that the court's failure to charge the jury as such constitutes error.

Under the circumstances of this case, we conclude that the solicitor's comment on appellant's lack of remorse, the admission of the superfluity of testimony of appellant's prior bad acts and crimes, and the insufficient *Norris* charge denied appellant the fundamental standards of due process and a fair trial.

Based upon our disposition of these issues, it is not necessary that the Court address appellant's remaining exceptions. This case is reversed and remanded for a new trial.

Reversed and remanded.

NESS, C. J., GREGORY and HARWELL, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.