586 S.E.2d 857

**Geoffrey R. PAYNE, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 25719.**

Supreme Court of South Carolina.

Submitted March 19, 2003.

Decided Sept. 22, 2003.

Assistant Appellate Defender Aileen P. Clare, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Chief, Capital & Collateral Litigation Donald J. Zelenka, and Assistant Deputy Attorney General Allen Bullard, all of Columbia, for Respondent.

Chief Justice TOAL:

Petitioner, Geoffrey Payne ("Payne") asserts that his counsel was ineffective for failing to object to counsel for co-defendant's comment on Payne's right not to testify.

### FACTUAL/PROCEDURAL HISTORY

Geoffrey Payne ("Payne") was convicted of murder and criminal conspiracy,[1] and this Court affirmed his convictions

---

1. Payne's co-defendant, Joseph Kelsey ("Kelsey"), was also convicted of murder and criminal conspiracy.

on direct appeal. *State v. Payne,* Op. No. 98–MO–008 (S.C. Sup.Ct. filed January 26, 1998). Payne applied for post-conviction ("PCR") relief, which was dismissed. Payne's counsel petitioned for a writ of certiorari requesting to be relieved as counsel. *Johnson v. State,* 294 S.C. 310, 364 S.E.2d 201 (1988). The petition was denied, and the Court ordered rebriefing, and later granted certiorari on the following issue:

> Was Payne's counsel ineffective for failing to object to counsel for the co-defendant's comment on Payne's right to remain silent during the closing argument?

## Law/Analysis

Payne asserts that his counsel was ineffective for failing to object to his co-defendant's counsel's statement about his right to remain silent. We disagree.

In his closing argument, Kelsey's attorney, Douglas S. Strickler ("Strickler"), stated to the jury,

> So I will talk with you a little about what I had to say at the start; and that's that he would go ahead and confess to what he is guilty of, what he has done. What did Mr. Breibart tell you at the start? That's [Payne's] attorney.
>
> I've got to bring that up because yesterday you heard nothing but Joe Kelsey because *Joe wanted and was willing to sit right there and look y'all in your eyes and tell you the answer to the only questions that matter,* not whether he remembered seeing blood when he talked about it at one point and didn't remember it another time or whether, you know, there is a two-inch difference in the size of the pipe bomb.
>
> He talked with you about the only questions that matter in this case, and there has never been anything to say from the moment he sat down and gave his statement to the police—which he brought to your attention and which he testified to and which the State makes no claim that he testified inconsistently with.
>
> He has said consistently that she was killed in the back seat by [Payne]....

(emphasis added). Payne alleges that Strickler's statement concerning Kelsey's willingness to testify, and his indirect

reference to the fact that Payne did not testify, infringed on his constitutional right to remain silent. Thus, he alleges that his counsel was ineffective for failing to object to the comment.

In order to prove ineffectiveness of counsel, Payne must prove that his counsel's performance was deficient and that the deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Gallman v. State*, 307 S.C. 273, 414 S.E.2d 780 (1992).

The state may not directly or indirectly comment on the defendant's right to remain silent. *State v. Johnson*, 293 S.C. 321, 360 S.E.2d 317 (1987). Further, a co-defendant's counsel is held to the same standard because the importance of this protection is the effect an indirect reference may have upon the jury regardless of whose counsel made the reference. *State v. Green*, 269 S.C. 623, 239 S.E.2d 646 (1977).

The PCR judge found that Strickler's comment did not indirectly reflect on Payne's right not to testify. We disagree. In our view, Strickler's comment, "you heard nothing but Joe Kelsey because Joe wanted and was willing to sit right up there and look y'all in your eyes and tell you the answer to the only questions that matter," *does indirectly refer* to the fact that Payne elected to remain silent. Accordingly, we believe that Strickler inappropriately commented on Payne's constitutional right not to testify, and counsel for Payne's failure to object satisfies the deficiency prong of the *Strickland* analysis. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

But *Strickland's* prejudice prong is not satisfied because there was overwhelming evidence that Payne murdered the victim. *Id.; See also Gill v. State*, 346 S.C. 209, 552 S.E.2d 26 (2001) ("improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant.")

Both Kelsey and co-defendant Jammie Lee ("Lee") testified that Payne strangled the victim. Lee testified that Payne hit the victim twice on the head with a wrench. After Payne strangled the victim, Lee testified that the victim was still alive, and Kelsey testified that the victim was dead. Both Lee and Kelsey testified that Payne had sexual intercourse with

the victim, attempted to remove the victim from the vehicle and take her into the woods. Lee and Kelsey helped take the victim into the woods. Kelsey testified that he placed the pipe bomb in the victim's mouth and that Payne lit the fuse with a lighter. Lee testified that Payne threw the lighter on the dashboard of his car. Whether the victim died by Payne strangling her to death, or by Payne lighting the fuse of the pipe bomb that exploded in her mouth, the testimony overwhelmingly proves that Payne murdered her. Therefore, we hold that Payne was not prejudiced by his counsel's failure to object to Strickler's reference to Payne's refusal to testify.

## Conclusion

Based on the reasoning above, we **AFFIRM** the PCR judge's determination that Payne's counsel was not ineffective for failing to object to Strickler's comment on Payne's right to remain silent.

MOORE and WALLER, JJ., concur.

PLEICONES, J., concurring in result in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES concurring:

I concur in the result, but write separately because, in my opinion, the PCR judge correctly found that attorney Strickler did not impermissibly comment on petitioner's exercise of his Fifth Amendment privilege to remain silent. He therefore found that petitioner's counsel was not ineffective in failing to object. I agree with the PCR judge's analysis, and agree with the majority that we should affirm.

In *State v. Green,* 269 S.C. 623, 239 S.E.2d 646 (1977), the Court was faced with the claim that the trial court erred in denying appellants' motion for a severance. At trial, appellants had sought either a severance, or the right to comment on a codefendant's refusal to take the stand. The Court held that the trial court committed no error in refusing to permit the appellants to comment on the codefendant's refusal to take the stand, and cited with approval to a Fifth Circuit decision [2]

---

**2.** *De Luna v. United States,* 308 F.2d 140 (5th Cir.1962).

which held that a comment on an accused's silence is improper whether made by a codefendant, by the prosecutor, or by the judge. *Id.* The Court acknowledged that in situations where an attorney must, in order to fulfill his duty to his client, call attention to a codefendant's silence, a severance was warranted. In *Green,* no severance was required because the appellants and the codefendant did not have antagonistic defenses and therefore the appellants were not prejudiced by their inability to comment on the codefendant's refusal to take the stand.

Viewing *Green* in context as a severance case, I am not as confident as the majority that it should be read to hold that the same, if not stricter, proscriptions on references to a defendant's silence apply to codefendants' attorneys as to judges and prosecutors.[3] In my opinion, we should recognize that an attorney, in the course of zealously representing his client, must emphasize the facts that place his client in the best light. I would adopt a test similar to that used in the Eighth Circuit and in the Eleventh Circuit when reviewing allegedly improper comments made by a codefendant's attorney: whether the attorney manifestly intended to refer to the defendant's silence or whether the comment was of such a nature that the jury would naturally and necessarily take it as a reference to the defendant's silence? *See e.g., United States v. Jackson,* 64 F.3d 1213 (8th Cir.1995). In other words, we should ask whether the comments actually or implicitly invited the jury to infer the defendant's guilt from his silence. *See e.g., United States v. Mena,* 863 F.2d 1522 (11th Cir.1989).

In the present case petitioner and his codefendant (Kelsey) presented antagonistic defenses in which each blamed the other for killing the victim. Petitioner's attorney's (Breibart's) pretrial motion to sever the cases was denied, as were his repeated requests for a severance and/or a mistrial during the proceedings. During opening statements, Strickler acknowledged Kelsey's guilt of two of the charges, possession of a pipe bomb and desecration of human remains, but denied that his client had murdered the victim or conspired with

---

3. I note that federal circuits appear split whether a Fifth Amendment violation even occurs when the comment is made by a codefendant's attorney. *Compare, e.g., United States v. Whitley,* 734 F.2d 1129 (6th Cir.1984) (no violation) *with United States v. Patterson,* 819 F.2d 1495 (9th Cir.1987).

petitioner to commit the murder. During Breibart's opening statement, he criticized Strickler's acknowledgment of Kelsey's culpability, but told the jury that Kelsey had confessed to all the crimes.

Kelsey testified, and admitted his guilt of the charges other than conspiracy and murder: petitioner did not testify. A third youth involved in the crimes testified for the State; he had initially identified Kelsey as the perpetrator, but in later statements and in his trial testimony he identified petitioner as the responsible individual.

During the closing argument, Strickler said:

So I will talk with you a little bit about what I had to say at the start; and that's that [Kelsey] would go ahead and confess to what he is guilty of, what he has done. What did Mr. Breibart tell you at the start? That's [petitioner's] attorney.

I've got to bring that up because yesterday you heard nothing but [Kelsey] because [he] wanted and was willing to sit right up there and look y'all in your eyes and tell you the answer to the only questions that matter ...

He talked with you about only the questions that matter in this case, and there has never been anything to say from the moment he sat down and gave his statement to the police which he brought to your attention and which the State makes no claim that he has testified inconsistently with. He has said consistently that [the victim] was killed in the back seat by [petitioner]....

There was no objection to this argument.

At the PCR hearing, petitioner complained that Strickler's argument referring to Kelsey's testimony impermissibly singled out petitioner's failure to testify. When Breibart was asked at the hearing why he did not object, he said that he felt highlighting Kelsey's trial testimony was favorable to the petitioner since Kelsey had essentially confessed to murder, just as Breibart had predicted in his opening statement. Breibart testified that he felt Strickler's closing argument was not a comment on petitioner's silence, but was instead intended to emphasize Kelsey's self-damaging trial testimony.

The PCR judge held that Breibart was not ineffective in failing to object to Strickler's closing argument because, viewed in context, the argument was not an improper com-

ment on petitioner's right to remain silent. We must uphold this finding if supported by any probative evidence in the record. *Jackson v. State,* Op. No. 25678, 2003 WL 21692966 (S.C. Sup.Ct. filed July 21, 2003). In my opinion, there is evidence to support the finding that Breibart's strategic decision not to object was reasonable since the argument, viewed in context, was helpful to his client's position. *See e.g. Legare v. State,* 333 S.C. 275, 509 S.E.2d 472 (1998) (where counsel articulates valid reason for strategy he is not ineffective). Further, applying the test outlined above, I would not find the comments objectionable as actually or implicitly inviting the jury to infer petitioner's guilt from his silence, but rather as Strickler's proper attempt to highlight the consistency of Kelsey's story. *See e.g. United States v. Jackson, supra* (attorney may properly argue his testifying client's credibility in closing); *United States v. McClure,* 734 F.2d 484 (10th Cir.1984) (testifying codefendant's attorney may properly argue his client's willingness to face questioning on stand).

For these reasons, I would affirm the PCR court's order denying petitioner relief. This case highlights one of the problems that arise when codefendants have antagonistic defenses but the State nevertheless insists upon a joint trial. The codefendants in this case were placed in the unenviable position of having to attack each other while the State played a largely passive role. Had the trial court's decision to deny petitioner's severance motion been before us, I would have been inclined to find reversible error.[4] *State v. Green, supra.*

BURNETT, J., concurs.

---

4. Petitioner took no direct appeal.